GREENBERG *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 164, September Term, 1960.]

*Decided April 4, 1961.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, MARBURY and SYBERT, JJ.

*Walter R. Tabler,* with whom were *Joseph M. Roulhac* and *Donald S. Hurwitz* on the brief, for appellant.

*John A. Dewicki, Assistant City Solicitor,* with whom were *Harrison L. Winter, City Solicitor,* and *Ambrose T. Hartman, Deputy City Solicitor* on the brief, for Mayor and City Council of Baltimore, one of the appellees.

*Louis Hoffman* for The American Oil Company, the other appellee.

BRUNE, C. J., delivered the opinion of the Court.

A taxpayer, Samuel Greenberg, appeals from an order of the Baltimore City Court (Harlan, J.) affirming the decision of the Board of Municipal and Zoning Appeals (the Board) which approved an application of American Oil Company (American) to do the following things at a service station owned by it: (1) to raze an existing one-story office building (16 by 16 feet) and canopy and to construct a new masonry and porcelain enamel service building (59 feet by 27 feet, 4 inches), with three bays; (2) to install five new floodlights in place of existing lighting; and (3) to replace four existing gasoline pumps with four new pumps of more modern design, without any change in the location of the pumps or pump "islands," and without any change whatever in ex-

isting gasoline storage tanks. American is one of the appellees; the other is the City of Baltimore. The service station in question is located at 4608-4610 Liberty Heights Avenue, which is at the northeast corner of Liberty Heights and Gwynn Oak Avenues. It was built in 1929, about two years before the enactment of the 1931 basic Zoning Ordinance of Baltimore, and about seven or eight years before the adoption of the Gasoline Filling Station Amendment (Ord. No. 318, approved January 16, 1937). The service station is in a First Commercial Zone. A moving picture theatre was built next door to it in 1935.

The questions presented grow out of the proximity of the theatre and the enactment of the Gasoline Filling Station Ordinance, as now embodied in Sections 37 and 38 of the Zoning Ordinance (Baltimore City Code of 1950, Article 40, as amended). Section 37, which deals with original jurisdiction of the Board, provides in part that "[a] filling station and/or tanks and/or pumps for the sale at wholesale or retail of inflammable liquids in a use district where permitted by the use regulations may be permitted only after a public hearing before the Board * * *, and compliance with the terms and conditions hereinafter set forth." Then follows a proviso, paragraph (a) of which states in part that: "No building or structure of any kind shall hereafter be erected, altered or used for the sale of gasoline, or any other motor fuel, on any lot or premises" having a boundary within three hundred feet of any motion picture theatre in the City of Baltimore. Section 38 provides, among other things, that no permit for any of the uses specified in Section 37 shall issue until the application shall have been approved by the Board, and that the Board "shall not consider or approve an application for a permit within two years after the rejection of an application for a similar permit for the same premises * * *."

The application involved in this appeal was filed March 30, 1960. In September, 1959, American had filed an application relating to the same premises for a permit to build a new three-bay masonry and porcelain enamel service station building (slightly larger than that now proposed) and six

new gasoline dispensers, one sign and five floodlights. The existing gasoline storage tanks of 8,000 gallons capacity were to remain, three new 4,000 gallon tanks and two new 500 gallon tanks (having an aggregate capacity of 13,000 gallons) were to be added, and the old service station building and the pump island were to be razed. Under that proposal, and under the 1960 application as well, the existing lubrication building (48 by 25 feet) at the rear of the lot was to remain. The Board approved the 1959 application. The present appellant appealed from its decision to the Baltimore City Court, and that Court (Oppenheimer, J.) upheld the Board as to the building, but held its action unauthorized as to the pumps and gasoline tanks.

In reaching his conclusions Judge Oppenheimer made a sharp distinction under Section 37 (a) between buildings not used or to be used for the sale of motor fuel and the construction or alteration of facilities for the actual sale of gasoline. Judge Harlan made the same distinction, which the appellant now challenges. We think that he was correct in making it and in holding, as did Judge Oppenheimer, that the Board might grant a permit under Section 37 (a), in accordance with its terms and the terms of Sections 38 and 39, for the razing of an old building and the construction of a new one on a filling station lot, notwithstanding that such building would be within three hundred feet of a motion picture theatre, provided the new structure should not be used for the sale of gasoline or other motor fuels. *Moylan, Inc. v. Board of School Com'rs of Baltimore City,* 180 Md. 316, 24 A. 2d 297, is controlling on this point. Here, as in the *Moylan* case, the use of the premises has, by reason of the erection of a nearby building of a certain type (there a school, here a motion picture theatre) and by reason of the enactment of Ordinance No. 318 of January, 1937, become a non-conforming use; but no change in that use is proposed.

Another contention advanced by the appellant is that American's 1960 application is similar to its 1959 application relating to the same premises, and that the Board was therefore precluded by the terms of Section 38 from consider-

ing it until two years after Judge Oppenheimer's decision of December, 1959. The specific pertinent language of Section 38, above quoted, is a prohibition against consideration or approval within two years after the *rejection* of an application for a similar proposal. The short answer to this contention, insofar as the building is concerned, and also, we think, insofar as the lights are concerned, is that there has been no rejection. The Board granted the 1959 application *in toto;* Judge Oppenheimer reversed its decision because it undertook to permit the enlargement of the gasoline storage tanks and relocation of the pump islands and thereby exceeded its authority under Section 37 (a). His reversal of the order of the Board was, however, expressly "without prejudice to the right of the applicant to make a new application for the rebuilding and moving of the service building." It would be a strained reading of his opinion or order to construe it as a "rejection" of the application to tear down the old and build a new service building, or of any other part of the 1959 application than that dealing with additional gasoline storage tanks and the relocation of islands and pumps. This case thus differs in a material respect from *Nuova Realty Co. v. Mayor & C. C. of Baltimore,* 197 Md. 266, 78 A. 2d 765. Perhaps (but by no means surely) it would have avoided the present controversy if the court order of December, 1959, had (as under Section 40 (d) it might have done) explicitly affirmed the decision of the Board as to the old and new service buildings (and the lights), and had reversed it as to the tanks and pump islands; but that, we think, is in substance the meaning and effect of Judge Oppenheimer's opinion and order on the 1959 application.

The appellant makes no special point of the fact that the new permit allows the erection of new floodlights. Certainly, they are not a part of the actual equipment used to handle and dispense gasoline, and we think that they are within the reasoning of the *Moylan* case.

The question as to the replacement of obsolete pumps with pumps of a new model—the remaining point at issue—is somewhat different. It is not contended that the language of

Section 37 (a) that "[n]o building or structure of any kind shall hereafter be erected, altered or used for the sale of gasoline, or any other motor fuel" where the premises are within three hundred feet of a school, motion picture theatre, etc., should be construed as preventing the continuation of an existing use. We do not think that such a construction would be compatible with the decision in the *Moylan* case. There is some doubt as to whether a gasoline pump, apart from the island on which it is erected, is a "structure" within the meaning of Section 37 (a). (It certainly is not a "building.") Whether it can be regarded as a "structure" or not (which we do not decide), it is our opinion that mere replacement of an old pump with a new one does not constitute the erection or alteration of a structure within the meaning of Section 37 (a). An opposite construction would lead into serious difficulties. For example, if old pumps not merely became obsolete, but completely worn out, would their replacement be prohibited? Or if some single part, large or small, became so worn as to require replacement, would that be prohibited? If mere replacement of a pump amounted to a structural erection or alteration, minor, but unrepairable, mechanical defects could readily lead to the entire loss of a non-conforming use. A construction producing such a result would be completely at variance with the concept embodied in Section 43, which permits restoration of a building destroyed in whole or in part by fire, wind, flood, explosion, etc., and the continuance of the use existing at the time of such destruction. In our opinion, the prohibitions of Section 37 (a) against the erection or alteration of structures do not prevent the replacement of an old pump with a new one, where there is no change in location or construction of any new island and no change in gasoline storage tanks.

It remains only to consider whether the application merely to install new pumps in place of old ones at the old location, without any change in gasoline storage tanks, is or is not similar to an application for the erection of new pumps, at new locations, with much greater gasoline storage capacity so as to fall within the two-year waiting period of Section 38.

In the *Nuova Realty Co.* case, *supra,* the two applications were similar in these respects: first, each proposed the establishment of a new filling station on a particular lot which had not previously been used for the sale of gasoline; second, each proposed the construction of a filling station building and the construction of gasoline storage and dispensing facilities—tanks, islands and pumps. The differences (apart from such matters as dates) were in plans and specifications, including the location of pumps, changes in which were made to meet some requirements of the Zoning Ordinance. In the instant case, insofar as pumps are concerned, the points of similarity are that each pertained to the same premises and each pertained to gasoline pumps. The points of dissimilarity are that, on the one hand, the first application contemplated the installation of new pumps and new islands at new locations, with the addition of new gasoline storage tanks of very much greater storage capacity than the old, and on the other hand, that the second application contemplated nothing but the replacement of old pumps with new at the old islands, using the old storage tanks, without change or addition. We think that these points of dissimilarity, within the rather narrow scope of the permit here sought, make the two applications sufficiently different to take the present limited application relating to pumps out of the prohibition of Section 38 against a new application within two years after the rejection of a similar application for the same property. In *Nuova Realty* the changes as to pumps were not of much significance in the over all situation; here they are proportionately of much greater moment, and hence changes therein are of much more importance in determining the similarity or dissimilarity of the first and second applications.

The difference between the two applications were such that rejection of the 1959 application is not a bar to consideration and approval within two years of the 1960 application merely to replace old pumps with new ones.

In accordance with the above views the order appealed from will be affirmed.

*Order affirmed, with costs.*