MARTIN AND BURCH, ET AL. *v.* MAYOR AND ALDERMEN OF ANNAPOLIS, ET AL.

[Nos. 64, 65 & 66, September Term, 1967.]

552

*Decided February 6, 1968.*

*Motion for modification of order as to costs filed February 21, 1968; denied March 4, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Lawrence F. Rodowsky* and *Robert S. Paye* for appellants.

*Neil Tabor* and *William L. Siskind,* with whom was *Allan C. Westcott* on the brief, for Hospitality House of Annapolis, Inc., one of appellees; *Malcolm B. Smith* on the brief, for Mayor and Aldermen of Annapolis, part of appellees; and *William A. Franch* on the brief, for the Yacht Basin Company, other appellee.

BARNES, J., delivered the opinion of the Court.

The three appeals and cross-appeals, Nos. 64, 65 and 66, September Term, 1967, consolidated for briefing pursuant to the order of the Court, and argued together, represent the three last legal battles in a campaign by various property owners and of Historic Annapolis to prevent the construction by Hospitality House of Annapolis, Inc. (Hospitality House), one of the appellees, of a hotel with restaurant and parking facilities on waterfront land on Annapolis harbor on the east side of Compromise Street at the foot of St. Mary's Street. Another aspect of the controversy was before us in *Martin v. Mayor and Aldermen of Annapolis,* 240 Md. 579, 214 A. 2d 800 (1965).

For convenience, we will refer to No. 66 as the "Zoning Appeal Case," to No. 64 as the "Height Case" and to No. 65 as the "Hotel Case." We will consider them in that order in this opinion.

### *The Zoning Appeal Case* (No. 66)

The hotel site involved in the litigation is on waterfront land in the City of Annapolis on the east side of Compromise Street at the foot of St. Mary's Street. It is leased by Hospitality House from The Yacht Basin Company, a Maryland corporation. It is located within that portion of Annapolis zoned as a Maritime District. It is also within the Historic Area of Annapolis established by Section 6-13 of the Annapolis City Code (1960 Edition). This Historic Area covers a section of the downtown and harbor area of Annapolis. A Board of Review was authorized by that section of the Code "to review the appropriateness of exterior architectural features of buildings and structures" thereafter erected in the Historic Area and to make recommendations thereon. Much of the same area has been designated as a National Historic Landmark.

The original building permit was issued on May 22, 1964, to Hospitality House for the construction of a hotel on the site in question. Filed with the application were plans for a proposed seven-story hotel with 137 rental units and a one-story restaurant located in the northeastern part of the site. On the southwestern part of the site a portion of the parking area for guests of the hotel was proposed to be provided by an elevated parking deck. There were also additional parking spaces at ground level on the northwestern portion of the site, adjacent to the hotel, but separate and apart from the elevated deck. There were a total of 140 parking spaces.

Hospitality House was notified on May 27, 1964, by the Mayor of Annapolis and the City Engineer that the Mayor and Aldermen of Annapolis (the Council) had adopted a resolution "cancelling" the permit. This cancellation of the permit resulted from the failure of the City Engineer to submit the plan to a Board of Review in accordance with Sections 6-33 to 6-40 of the City Code. All of the terms of the members of the Board of Review had expired in 1960, and no new members had been appointed. The City Attorney ruled that the Board of Review could still act and the Board of Review advised the Mayor that it disapproved the plans. Section 6-39 of the City Code, however, provides that disapproval by the Board of Review shall not be cause for the denial of the permit if the application otherwise complied with the provisions of the City Code.

Captain William A. P. Martin, his wife, and other residents and taxpayers, the appellants, on June 1, 1964, filed two administrative appeals; one to the Zoning Board of the City setting up certain alleged violations of the zoning ordinances in the issuance of the permit, and the other to the City's Board of Appeals (the "Building Board") established under Section 107.1 of the National Building Code (the National Building Code is incorporated by reference into the City Code by Section 6-13 of the City Code) stating certain reasons why the application allegedly did not comply with provisions of the City's Building Code.

Among other things, it was alleged in the appeal to the Zoning Board that the use as a hotel and certain other facilities shown on the plans was not permitted in the Maritime Dis-

trict, that the building exceeded the height limitations and that there were insufficient parking spaces. After a hearing, the Zoning Board on August 3, 1964, ruled that the application should have been denied because it found that the application contemplated certain commercial uses, not accessory to a hotel, which were not permitted in the Maritime District and the building permit should not have been issued until an accessory parking permit was issued. The Zoning Board, however, also indicated that hotels and accessory restaurants were permitted uses in the Maritime District and that in all respects, other than those noted, the application complied with the Zoning Code. Section 26-40 of the City Code gives any aggrieved party a right to appeal to the Circuit Court for Anne Arundel County from a decision of the Zoning Board, but none of the parties appealed from its decision.

On August 4, 1964, the Building Board dismissed the companion appeal on the ground that it was "moot" in view of the decision of the Zoning Board on August 3 and again none of the parties appealed.

On August 10, 1964, Hospitality House reapplied for a building permit and in its new application stated that it was "not making application for any commercial facilities on the subject property, except for a hotel or motor inn and restaurant." On the same date, Hospitality House also applied to the Council for a parking permit "as an accessory use to the hotel or motor inn to be erected." The issuance of the parking permit by the Council was attacked in an equity suit and this permit was the subject matter of the prior appeal in *Martin v. Mayor and Aldermen of Annapolis,* 240 Md. 579, 214 A. 2d 800 (1965), *supra.*

A new building permit was issued to Hospitality House on October 6, 1964, and on October 14, 1964, the same persons who had instituted the prior administrative appeals filed two new appeals to the Zoning Board and to the Building Board, alleging as grounds for the respective appeals substantially the same grounds as those alleged in the prior appeals. At the second hearing before the Zoning Board the appellants offered as their only evidence the transcript of the first hearing together

with certain exhibits introduced by them at the first hearing and the new application.

The Zoning Board on December 31, 1964, rendered its decision affirming the issuance of the permit, stating, *inter alia,* that it "adheres to its prior decision that a hotel or motel is permitted in a maritime zone," and that the "building falls within the height exceptions set forth in Section 26-32 of the City Code and is therefore not subject to the height regulations provided in Chapter 26." Section 26-32 of the City Code provided that "fireproof hotels" were excepted from the 50 foot height limitation otherwise applicable to buildings in Maritime Districts and under Section 26-31. An appeal was taken from the decision of the Zoning Board to the Circuit Court.

Prior to the decision of the Zoning Board the Council on December 14, 1964, amended Section 26-32 of the City Code to provide that no building in the Historic Area could exceed 45 feet in height but that the ordinance "shall not apply to any construction for which application has been made for a building permit prior thereto, and further shall not apply to any proposed construction currently the subject of appeal to administrative agencies of the City of Annapolis or to the Circuit Court for Anne Arundel County, such construction to be subject to ordinance relating to height in effect at the time of such appeal."

The Building Board in a decision rendered on March 8, 1965, upheld the issuance of the permit as having been properly issued under the provisions of the City Building Code. No appeal was taken from this decision of the Building Board.

At the time of the decision of the Zoning Board on December 31, 1964 (and also on August 3, 1964) Chapter 26 of the City Code in regard to zoning provided that the City of Annapolis was divided into nine use classifications in descending order: Residential, Educational and Cultural, Civic, Community Shopping Center, Personal Service, Retail Business, Commercial, Industrial and Maritime. The system of classification adopted was to list in a separate section the "permitted uses" in each district followed by another section setting forth the "prohibited uses" within the same district. Section 26-6 provides that the uses listed in the sections setting forth the "per-

mitted uses" within a district are "known by the names opposite the respective sections and items" for purposes of reference throughout the Chapter. To illustrate how this system of classification operates, the "residential uses" in the Chapter are those listed in items 1 through 22 of Section 26-10. This section begins by stating: "In all residential districts, land and buildings shall be used, and buildings shall be arranged, intended and designed to be used for one or more of the following specified uses." Then follow the items of residential use including dwellings, apartment houses, churches, etc. These "residential uses" are then referred to in other sections of the City Code as "residential uses" for purposes of identification. For example, in Section 26-19(a)1 it is provided that a residential use is prohibited in a Personal Service District and Section 26-26(1) provides that residential uses are prohibited in an Industrial District.

Maritime Districts are established by Sections 26-27 and 26-28. Section 26-27 provides, in relevant part, as follows:

"Maritime districts—Permitted uses.

In all maritime districts, land and buildings shall be used and buildings shall be arranged, intended or designed to be used, for any one or more of the following specified uses:
1. Boat anchorage
2. Boat building
3. Boat houses
* * *
9. Cabinet working
10. Carpenter shops
* * *
16. Plumbing shops
* * *
21. Welding
* * *
23. Seafood processing.
"Sec. 26-28 Same—Prohibited Uses.

In a maritime district, land and buildings shall not be used and buildings shall not be arranged, intended

or designed to be used for any one or more of the uses prohibited in industrial districts, items 5 to 32."

Turning to Section 26-26, the Prohibited Uses in an Industrial District, we find the following:

"1. *Residential uses*
2. *Educational and cultural uses*
3. *Community shopping centers*
4. *Personal service uses*
5. Abattoir or stockyard
6. Acetylene gas manufacture
7. Acid manufacture
\* \* \*
31. Tannery
\* \* \*." (Emphasis supplied).

A "Hotel" is listed as a permitted "personal service use" in Section 26-19(c)2.

Section 26-8 provides as follows:

"In any case where it is not clear from the provisions of this chapter that a proposed use is intended to be prohibited in a district, the provisions of that section setting forth the uses permitted in that district shall prevail and if the proposed use is not one in the list of those permitted, it shall be prohibited as though it were included in the prohibitions. The method of naming the uses permitted in a district, followed immediately by naming the uses prohibited in that district, is intended for clarity and to promote the definitive application of the regulations."

While the appeal from the Zoning Board decision of December 31, 1964, was pending in the Circuit Court, the Council on November 15, 1965, enacted the following amendment to Section 26-27 (Maritime districts—permitted uses):

"WHEREAS, the Mayor and Aldermen of the City of Annapolis have been advised that some question has been raised as to whether or not a hotel or motel

is a permitted use in a Maritime District under Section 26-27 of the Code of the City of Annapolis.

"WHEREAS, the Mayor and Aldermen of the City of Annapolis believe that a hotel or motel is a permitted use within such a Maritime District under the existing provisions of the Code of the City of Annapolis, and the purpose of this Ordinance is to dispel any doubt or clarify any ambiguity which may have existed prior to the passage of this Ordinance by specifically naming a hotel or motel as a permitted use within such a district, subject to the limitation hereinafter provided; and

"WHEREAS, the Mayor and Aldermen of the City of Annapolis further desire by the passage of this Ordinance to restrict or limit those types of hotel or motel structures which may be erected or constructed in a Maritime District to those structures which have 100 rooms or more as it is believed that such structures will more adequately serve the public convenience and necessity for hotel or motel accommodations and will more nearly promote the public welfare as such types of hotels or motels are generally modern, fire-proof structures which more adequately serve the public interest.

"SECTION I: BE IT ESTABLISHED AND ORDAINED BY THE MAYOR AND ALDERMEN OF THE CITY OF ANNAPOLIS that Section 26-27 of the Code of the City of Annapolis (1960 Edition), title 'Zoning', subtitle 'Maritime districts—Permitted uses' is hereby amended by adding Paragraph 24 to follow immediately after Paragraph 23 of said Section, and to read as follows:

*Section* 26-27 Maritime districts—Permitted uses.
\* \* \*

"24. Hotels or motels having 100 or more rooms together with uses accessory thereto such as a restaurant and a swimming pool."

The Zoning Board held that a hotel use was permitted in a Maritime District and Chief Judge Macgill in the Circuit Court filed a carefully considered opinion and affirmed the Zoning Board's decision holding that the purpose of Section 26-28 was to prohibit in Maritime Districts only those uses which were prohibited in Industrial Districts by items 5 to 32 in Section 26-26. We agree and will affirm the lower court's order of October 7, 1966, affirming the Zoning Board.

The Annapolis Zoning ordinance, as we have seen, follows the usual form in setting forth the zoning districts on a descending scale. It begins with the most restricted district — Residential—and proceeds through Institutional, various classes of Commercial, then to Industrial and ends with the Maritime District. The Personal Service District precedes the Maritime District in the listing of districts, so that it is reasonably concluded that the Personal Service District was considered to be a lighter use district than the Maritime District. In the absence of a specific provision to the contrary in the zoning ordinance, the law generally is that zoning districts having less restricted uses permit the uses of the more restricted use districts. As Mr. Justice Baldwin stated for the Supreme Court of Errors and Appeal of Connecticut in *Corthouts v. Town of Newington,* 140 Conn. 284, 287, 99 A. 2d 112, 114 (1953) :

"Generally the districts of less restricted uses admit the uses of the more restricted ones."

See *Katobimar Realty Co. v. Webster,* 20 N. J. 114, 124, 118 A. 2d 824, 829 (1955).

It is clear to us that the proposed hotel use was not intended to be prohibited in the Maritime District so that the provisions of Section 26-8 do not apply. If it had been intended to prohibit such a use this could have been easily accomplished by providing in Section 26-28 that items 4 through 32 rather than items 5 through 32 of the uses prohibited in Industrial Districts were prohibited in the Maritime District. The deliberate choice of items 5 to 32 and the exclusion of items 1 to 4 shows a specific legislative intent *not to prohibit* personal service uses (item 4), which includes a hotel use, from the Maritime District. Under Section 26-8, therefore, it is not necessary to consider the list of permitted uses, in order to resolve any ambiguity, in-

asmuch as no ambiguity exists. For the same reason it is not necessary to consider other well-established rules of construction urged upon us by Hospitality House that are applicable when an ambiguity exists, such as strict construction of a zoning ordinance as being in derogation of the common law and contemporaneous and long continued administrative interpretation.

The permit was issued to Hospitality House for the erection of a structure 80 feet high. Section 26-31 setting forth the "Height and rear and side yard regulations" provided in regard to Industrial and Maritime Districts: "For all buildings, maximum height, 50 feet; no yards required." Section 26-32, providing for "Height Exceptions" stated: "The height regulations of this chapter shall not apply to the construction of the following: 1. * * * fireproof hotels * * *." As the lower court stated in its opinion, the evidence before the Board established that the proposed hotel structure was substantially fireproof, so that there was no basis for disturbing the Board's finding that the height exception in the ordinance applied.

We have concluded also that the lower court was correct in holding that the pending matter of Hospitality House came within the saving clause of the ordinance of December 14, 1964, placing a height limitation of 45 feet for construction in the Historic Area, in which the site of the hotel is located. We will give our reasons for this conclusion when we later discuss the Height Case.

In view of our conclusions as above set forth, it is not necessary for us to consider the questions raised and argued by Hospitality House (1) that the ruling of the Board on the first appeal was *res judicata* in regard to whether hotels were excluded from the Maritime District, and (2) that the passage of the ordinance of November 15, 1965, which specifically provided that a hotel with 100 or more rooms was a permitted use under Section 26-27, rendered that issue moot at the time of trial in the lower court.

## *The Height Case* (No. 64)

On December 14, 1964, the City passed an ordinance which repealed and re-enacted with amendments Section 26-32 and which provided, in relevant part, as follows:

"Section I: * * * In the Historic Area of the City as defined in Section 6-33 of this Code no building shall be constructed or increased in height in excess of forty-five (45) feet except as may be permitted by the Mayor and Aldermen by resolution passed by a favorable vote of the majority of the entire membership thereof. * * *

"Section II: * * * this Ordinance shall take effect from the date of its passage, but shall not apply to any construction for which application has been made for a building permit prior hereto, and further shall not apply to any proposed construction currently the subject of appeal to administrative agencies of the City of Annapolis or to the Circuit Court for Anne Arundel County, such construction to be subject to Ordinance relating to height in effect at the time of such appeal."

A number of interesting questions are raised by the parties in the Height Case. These questions involve whether or not (1) the appellants had shown the required "special damages" to establish standing to challenge the provisions of the ordinance of December 14, 1964, as it applied to Hospitality House, (2) the attempted reservation of the Council of the power to grant a variance, a special exception or to legislate directly was a valid exercise of power, (3) if the attempted reservation of power was invalid, the invalid provision was severable from the provision of the ordinance establishing the 45 foot height restriction, and (4) the hotel came within the saving clause of the ordinance.

Inasmuch as we are of the opinion that the hotel did come within the saving clause of the ordinance, it is unnecessary for us to consider the other questions mentioned.

On October 6, 1964, Hospitality House had been granted a permit to build a hotel and when the ordinance of December 14, 1964, was enacted the permit was the subject of two administrative appeals—one to the Zoning Board, which was not decided until December 31, 1964, and the other to the Building Board, which was not decided until March 5, 1965. It seems clear to us that, as the lower court held, the saving clause was

intended by the Council to apply to the Hospitality House permit to construct a hotel and the language of the saving clause described precisely that permit and pending proceedings.

The appellants, however, earnestly contend that because of certain changes in the working drawings filed by Hospitality House with the City Engineer from the preliminary plans originally filed in August, 1964, on which the permit of October 6, 1964, was issued, the hotel is, in effect, being constructed under a new permit and not under the permit issued prior to the ordinance of December 14, 1964.

The preliminary plans showed a proposed rectangular seven story hotel building, approximately 80 feet in height, with dimensions of 164 feet by 58 feet on a one and one-half acre site to be erected entirely on the land. There were 137 rooms. There was an attached one-story restaurant facing the water and an open two level parking structure adjacent to the south side of the hotel facing Compromise Street. The 164 foot side of the structure and the two story parking extension faced Compromise Street at a slight angle.

In the final working drawings filed with the City Engineer in October, 1965, the site was reduced in size, the *height lowered* and the building "swung around" so that the short side of the building faced Compromise Street, with the long side projecting out into the water on piling for approximately 80 feet. The main hotel structure was a six story building, 221 feet by 78 feet, with a height of 59 feet 8 inches, the 78 foot portion of the building facing Compromise Street as already indicated. There were approximately 155 rooms. All of the parking was located under cover in a wing of the building adjacent to the north side of the main hotel structure. This wing consisted of two stories, the ground level being used for parking and the second level being used for a restaurant facing the water. The site was reduced from 1.51 acres to one acre, the .51 acre being relinquished by Hospitality House to its lessor, The Yacht Basin Company. The portion of the building structure on land rests on the same land occupied by the proposed structure shown in the preliminary plans.

The City Engineer approved the plans filed in October, 1965, as amendments to the original plans. Construction commenced

under the approved plans in December, 1965, and continued thereafter.

In our opinion, the plans submitted in October, 1965, were substantially similar to the plans originally submitted by Hospitality House. The basic scope of the original plans was not changed. Both sets of plans call for the same use, i.e., the erection of a hotel, with acccessory parking and restaurant facilities. There were modifications in the placement of the hotel and facilities on a reduced portion of the original site, but these modifications did not result in any substantial change in the original plans. The subsequent changes were amendments to the original plans, but the original permit with those changes and amendments continued. The situation at bar is analogous to that considered by our predecessors in *Nuova Realty Co. v. City of Baltimore,* 197 Md. 266, 78 A. 2d 765 (1951), which involved the provision in the Baltimore City ordinance providing that the Board of Municipal and Zoning Appeals could not consider certain types of permits within two years after rejection of an application of a "similar" permit for the same premises. An application for a gasoline service station for the premises had been filed on July 12, 1949, and this application was disapproved by the Board. The applicant, on August 12, 1949,—one month later—filed a "revised" plan for a gasoline service station on the same premises, but with a provision for a larger building than the one in the first application which was to be erected farther back from Hillen Road, with changes in the location of the gasoline tank and other changes to make the application conform with the Baltimore City Zoning Ordinance. In holding that the second application sought a "similar permit" and that the Board should not have considered it in view of the two year provision, Judge Grason, for the Court, stated:

> "It was not only a 'similar permit for the same premises' but it was the original permit with some changes and corrections to make it conform with the requirements of the Zoning Ordinance. The second application was at best *an amendment* of the first application." (Emphasis supplied). (197 Md. 272, 78 A. 2d 768).

The present case is to be distinguished from *Norwood Heights Improvement Association v. Baltimore,* 191 Md. 155, 60 A. 2d 192 (1948), and *Greenberg v. Mayor and City Council of Baltimore,* 224 Md. 618, 169 A. 2d 403 (1961), relied on by the appellants. In *Norwood Heights* the second application was for a very different apartment layout than that set out in the first application. The first application was for 118 apartments out of a total of 179 apartment units which were to be located on a 5.2 acre portion of the entire tract which *exceeded* the density provisions of the Baltimore City Zoning Ordinance. The second application was for a new layout with only 80 apartment units out of a total of 168 apartment units located on the 5.2 acre portion of the entire lot, which *complied with the density provisions* of the ordinance. In *Greenberg,* the second application was not barred because the Board had not *rejected* the first application, the Baltimore City ordinance provision only applying when the Board rejected the original application. See 224 Md. at 618.

In view of our opinion that the plans filed in October, 1965, were substantially similar to the plans filed in August, 1964, it is not necessary for us to pass upon the contentions urged upon us by Hospitality House that the City Engineer's approval of the October, 1965, plans was a discretionary act which cannot be collaterally attacked in the pending proceeding and that, in any event, the appellants are barred from raising any question involving the alleged changes in plans because of laches and a failure to pursue their administrative remedies.

We will affirm the lower court's decree of October 7, 1966, in the Height Case denying injunctive relief against the appellees.

### The Hotel Case (No. 65)

In the Hotel Case, the appellants, James W. Burch and others, filed a bill of complaint, later amended, against the Mayor and Aldermen of Annapolis, Hospitality House and The Yacht Basin Company in which they sought a declaration that the ordinance of November 15, 1965, amending Section 26-27 of the City Code so as to include as item 24 of the permitted uses in a Maritime District, hotels having 100 or more rooms together with accessory uses such as a restaurant and swimming pool,

was unconstitutional and invalid and that the City be enjoined "from permitting the use of maritime zoned land in the City of Annapolis for hotel or motel use over 100 rooms." We have already set out this ordinance in relevant part and it need not be repeated here. Substantial testimony by well-qualified experts was produced by the respective parties indicating, on the one hand, the alleged injurious effects of such a provision, and, on the other hand, that there would allegedly be no injurious effects from the provisions of the ordinance, that the 100 room provision was reasonable and that the provision was in accordance with the more modern concepts. Chief Judge Macgill in a carefully considered, closely reasoned, opinion concluded that (1) the plaintiffs, James W. Burch and Historic Annapolis, Inc., who are also appellants here, had standing to sue, (2) the portion of the ordinance of November 15, 1965, requiring a minimum of 100 rooms was invalid, (3) the invalid portion of the ordinance was not separable from the rest of the ordinance and the Mayor and Aldermen of the City did not intend the ordinance to take effect without its invalid portion so that the whole ordinance was invalid, and (4) prior to the enactment of the ordinance of November 15, 1965, hotels were permitted in Maritime Districts, as the lower court had decided in the Zoning Case, so that no injunctive relief would be granted against the defendants.

As we have already indicated in the Zoning Case, we are of the opinion that the lower court was correct in holding that hotels were permitted in Maritime Districts when the application for the permit by Hospitality House was filed, and prior to the passage of the Ordinance of November 15, 1965, so that we do not reach the other three questions considered by the lower court. We will affirm the order of October 7, 1966, in the Hotel Case denying injunctive relief against the appellees.

*Orders affirmed, the costs to be paid
by the appellants.*