583 A.2d 704

**MONTGOMERY COUNTY, Maryland et al.**

v.

**Patricia F. SINGER et al.**

**No. 21, Sept. Term, 1990.**

Court of Appeals of Maryland.

Jan. 7, 1991.

Stephen J. Orens (James J. Cromwell, William W. Beckett, Eileen T. Basaman, Frank, Bernstein, Conaway & Goldman, Bethesda), Kenneth P. Barnhart, Associate Gen. Counsel (Ronald D. Schiff, Gen. Counsel, Hyattsville), Clyde H. Sorrell, Co. Atty. (A. Katherine Hart, Sr. Asst. Co. Atty., Esther H. Liss, Asst. Co. Atty., Rockville), all on brief, for petitioners.

Koteles Alexander, James F. Shelton, Jr., Gartrell & Alexander, Silver Spring, amicus curiae, for Montgomery County Chamber of Commerce, Silver Spring Chamber of Commerce and National Business League, Montgomery County Chapter.

Rebecca E. Swenson and Leslie R. Strauss (Edward L. Wolf, Arnold & Porter, Washington, D.C.), all on brief, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

RODOWSKY, Judge.

In the continuing war of lawsuits between property developers and protesting property owners in Montgomery County, the particular battle presented here is being waged over a major retail, office and hotel project in the central business district of Silver Spring. The circuit court reversed approvals of the developer's project plan and preliminary plan after concluding that certain features of the county's sector plan were invalid. Because the questioned provisions of the sector plan, even if invalid, do not affect the validity of the granted approvals, we shall reverse.

Part of the Montgomery County planning process has focused on a sector consisting of the Silver Spring central business district (the CBD) and vicinity. This sector plan has been in effect since at least 1975. The CBD includes the major intersection of Georgia Avenue and Colesville Road and, at Colesville Road and Wayne Avenue, the Silver Spring Station of the Washington, D.C. metropolitan area rail rapid transit system (the Metro).[1] Much of the land in the CBD is zoned for business use as CBD–2 and CBD–3.

For approximately twelve years following adoption of the 1975 plan, there had not been any new residential construction in the CBD. The area had also suffered a decline in retail facilities, including loss of a department store. On the other hand, over two million square feet of new office space had been built during that period in the CBD along the roads leading to the Metro station.

In November 1987 the County Council of Montgomery County, sitting as a district council, adopted an amendment to the sector plan for the CBD. See Md.Code (1957, 1990 Repl.Vol.), Art. 28, §§ 7–108 and 8–101. Among the amendment's objectives were "to remove outdated staging provisions related to sewage capacity limitations, to include provisions related to allocating most transportation capacity to the core area, [and] to restrict major new development to an area that best serves public policy and design guidelines...." The amendment defined the core area.[2] It embraces the Metro station and the quadrants of the Coles-

---

1. The outline of the Silver Spring CBD forms an irregular cone with the tip of the cone to the southeast where Blair Road meets the Metro line. The eastern side of the cone roughly follows Fenton Street, or the rear of properties facing on the east side of Fenton Street. The top of the cone follows, from east to west, Cedar and Spring Streets to Sixteenth Street and Sixteenth Street to the boundary between Maryland and the District of Columbia. The west side of the cone is that boundary line.

2. The defined core area lies within East–West Highway on the southwest, Wayne Avenue on the south, Fenton Street on the east-northeast, and Cameron Street, Apple Avenue and an imaginary extension thereof to East–West Highway on the northwest.

ville Road–Georgia Avenue intersection. Excluded from the core is that part of the CBD farthest from the Metro station. Land zoned CBD–2 and CBD–3 lies both within and without the core.

The sector plan amendment also set forth certain development guidelines "[i]n order to achieve the retail and residential goals of the 1975 Sector Plan which [have] been lacking. . . ." These development guidelines operated only during development Stage II, a period which began with the November 10, 1987, approval of the amendment and expired December 31, 1989. Two of these interim development guidelines are in issue in the present case. One in part provides that "[o]ptional method projects for non-residential development may be approved only for properties within the Stage II Core Area. . . ." The other in part provides that "[o]ptional method projects for residential development may not have more than 12.5% of the floor area in commercial use."

Montgomery County adopted an adequate public facilities ordinance (APFO) in 1973. The APFO is in practice implemented by an annual growth policy (AGP) adopted by the County Council. A substantial factor in an AGP is the prevention or reduction of unacceptable motor vehicle traffic congestion. For the fiscal year ending June 30, 1988, performance evaluation criteria were in effect for the CBD for reviewing the adequacy of that local area's transportation under the AGP (the LATR Guidelines). Review for preliminary subdivision approval considers compliance with the LATR Guidelines.

Over the five year period preceding May 1988, approximately 8.2 acres of land (the Silver Triangle) in the Stage II core area of the CBD had been assembled by interests which we shall call, collectively, Moore & Associates, Inc. (Moore). The Silver Triangle lies along the southeast side of Colesville Road and is bisected from northwest to southeast by Georgia Avenue. The southwest point of the Silver Triangle is across Wayne Avenue from the Metro station. The Silver Triangle is zoned CBD–3. Under § 59–C–6.215

of the Montgomery County Zoning Ordinance (the Ordinance or Ord.), properties in CBD–2 and CBD–3 zones may be developed either under the standard method or under the optional method (OMD).  Under OMD "greater densities may be permitted and there are fewer specific standards [than under the standard method], but certain public facilities and amenities must be provided by the developer." Ord. § 59–C–6.215(b).

In May 1988 Moore applied to the Montgomery County Planning Board (the Board)[3] for its approval, known as project plan approval, of an OMD for the Silver Triangle. Moore proposed to develop 2,031,113 square feet in retail, hotel, office and parking uses, including two full service department stores.  The project contemplated using air rights over, and subsurface rights beneath, Georgia Avenue.  The Board found that the proposal complied with the Ordinance, the sector plan, the APFO and the LATR Guidelines.  In October 1988 the Board approved the project plan. At that time the Board also approved Moore's preliminary plan under the subdivision regulations.

The instant appellees, Patricia F. Singer et al. (Appellees), thereafter brought this administrative appeal, challenging both Board approvals.  The circuit court, in July 1989, reversed the Board's approval of the project plan and, "insofar as it depends upon" the project plan, the Board's approval of the preliminary plan.  That court viewed the two development guidelines that restricted OMD uses outside of the core area to be zoning prohibitions which had not been adopted by amendment of the Ordinance and its accompanying maps so that those guidelines were invalid under the rule of *West Montgomery County Citizens Ass'n v. Maryland–Nat'l Capital Park & Planning Comm'n*, 309 Md. 183, 522 A.2d 1328 (1987).  For reasons to be

---

**3.** We shall refer to "the Board" although all pleadings and papers in this action on behalf of the Board have been filed in the name of its parent agency, the Maryland–National Capital Park and Planning Commission.  See Md.Code (1957, 1990 Repl.Vol.), Art. 28, § 7–111.

described more fully below, the circuit court concluded that the invalidity of the development guidelines voided the Board's approvals of the Silver Triangle project.[4]

Moore and, later, the Board moved to alter or amend the judgment. By a supplemental order in November 1989 the circuit court stated that the Board's approval of the project plan was reversed "because of the reliance ... on the 1987 Sector Plan Amendment ..., provision[s] of which are, in light of applicable zoning, ineffective ... and because the rights of [the Appellees in this Court] may have been prejudiced by such reliance...." The court further "ORDERED, that in no other respect has the Court made any determination concerning the validity or invalidity of the 1987 Amendment to the Sector Plan...." Thus, the court did not invalidate the amended sector plan in its entirety.

Moore, Montgomery County and the Board appealed to the Court of Special Appeals. Each appellant then separately petitioned this Court to issue the writ of certiorari. We did so in advance of consideration of the matter by the Court of Special Appeals.[5]

## I

■ Appellees have moved to dismiss the appeal as moot and have furnished supplemental material to support that motion. It is the Appellees' position that the case has become moot,

> "not from the passage of time, but from the conscious and deliberate decision of all appellants to acquiesce in the Circuit Court's decision: the County by amending the Sector Plan to eliminate the problematic provisions; Moore by seeking new approvals in place of the ones that were reversed; and the Planning Board by approving

---

4. The circuit court rejected all of the Appellees' arguments that the Silver Triangle project violated the APFO and LATR Guidelines.

5. Each appellant also separately briefed the case in chief. We shall simply refer to Moore as if it were the sole appellant.

those applications on the basis of the newly amended Sector Plan."

Appellees Brief at 4.

It appears that in July 1989 Moore submitted new applications for project plan and preliminary plan approvals to the Board. The plans submitted were identical to those previously approved in all presently relevant aspects. Between late October 1989 and January 26, 1990, the CBD sector plan was amended to delete the two development guidelines found to be "ineffective" by the circuit court.[6] On January 26, 1990, the Board approved the project plan as conforming with the sector plan "and the recent amendment," and the Board also approved the preliminary plan. No one appealed these approvals.

In its January 1990 approval of the project plan, however, the Board added as a condition that Moore must enter into an agreement with the Board under which Moore will provide to the Board "on or before June 29, 1990, acceptable documentation demonstrating a commitment by two acceptable anchor stores to be located in the retail mall." The condition recites that the parties to the agreement "can mutually agree to extend the date by which such commitments must be provided if events related to the Board's approval, and which are beyond the control of [Moore], so warrant." But, "[f]ailure to produce the two commitments within any time frame then agreed to shall constitute noncompliance with this condition." In the October 1988 Board approvals there had been a requirement for documentation demonstrating the commitment of two acceptable anchor stores for the Silver Triangle project, but that requirement operated as a condition of site approval, not of OMD project plan approval.

---

6. Appellees have furnished us with a copy of a resolution of the Montgomery County Council directing the Board to recommend to the County Council amendments eliminating those provisions, but Appellees have not furnished the amendment itself.

Representations of even later facts, made to this Court by counsel at oral argument in October 1990, reveal that the difference in the two approvals has ongoing, substantial, legal significance. It appears that Moore obtained "acceptable documentation" for one anchor tenant by June 29, 1990, and that the Board agreed to an extension of time for obtaining a second anchor tenant's commitment. Further, an action was brought challenging this extension of time.[7] That action was pending and undecided at the time of oral argument. Whether Moore timely will obtain "acceptable documentation" from a second anchor tenant remains to be seen.

Of course, if, as Moore contends, the circuit court erred in this action by invalidating the Board's October 1988 approvals, Moore would have at least cleared the hurdles of project plan and preliminary plan approvals. Under those circumstances the failure, if any, by Moore timely to document a second anchor tenant's commitment would not affect the approvals already granted. Thus, there continues to be an actual controversy.

Nor has Moore acquiesced in the circuit court's decision by applying for the approvals which were granted after the "ineffective" development guidelines were deleted from the CBD sector plan. Moore has timely appealed from the circuit court judgment and has prosecuted fully that appeal. It is simply good lawyering, and not acquiescence, for Moore to establish a backup position under the CBD sector plan as further amended. The motion to dismiss is denied.

## II

■ On the merits of this controversy the circuit court held that two of the CBD sector plan development guidelines amounted to zoning, but were not adopted by the procedure required for zoning regulations so that those

---

7. The action is Billy Boy Carry Out, Inc. v. Maryland–Nat'l Capital Park & Planning Comm'n, Civil No. 61751, in the Circuit Court for Montgomery County.

guidelines were ineffective. The objective of the Board in adopting the questioned guidelines was to direct commercial development in the CBD to the area nearest the Metro station, *i.e.*, the core area, during Stage II. The guidelines' technique was to limit approval of OMD, non-residential projects to the core area. As a consequence properties zoned CBD–2 and CBD–3 within the CBD, but outside of the core, could not use OMD for non-residential projects during Stage II. Further, OMD projects for residential use in the CBD outside of the core were restricted to no more than 12.5% of the floor area for commercial use.

Appellees argued that those features of the 1987 amendments to the sector plan were zoning actions, governed by *West Montgomery County Citizens Ass'n*, 309 Md. 183, 522 A.2d 1328. Moore, Montgomery County and the Board argued that the challenged guidelines were proper exercises of the planning function. They relied principally on *Coffey v. Maryland–Nat'l Capital Park & Planning Comm'n*, 293 Md. 24, 441 A.2d 1041 (1982) and *Board of County Comm'rs of Cecil County v. Gaster*, 285 Md. 233, 401 A.2d 666 (1979). The circuit court agreed with the Appellees.

We shall assume, *arguendo*, that the circuit court was correct in the above-described aspect of its holding. We shall also assume that, were the Silver Triangle project to proceed, at least one Appellee is sufficiently aggrieved to have standing to invoke judicial review of the Board's administrative grant of the project and preliminary plan approvals.

Moore, however, argues that there is no legal nexus between the "ineffective" adoption of the two challenged developmental guidelines and the circuit court's reversal of the Board's 1988 approvals. We agree.

The Board found, and the circuit court affirmed, that Moore had complied with all legal requirements for issuance of the project and preliminary plan approvals. The Silver Triangle project lies wholly within the Stage II core area of the CBD. The restrictions in the development guidelines

that the circuit court ruled to be ineffective apply only to properties outside of the Stage II core area. The approvals granted by the Board to the Silver Triangle project did not depend on the "ineffective" guidelines.

It is not too simplistic to state that any invalidity of the two guidelines is irrelevant to the Board's 1988 approvals. When the circuit court filed its initial opinion and order, the motions to revise filed by Moore, and particularly by the Board, sought to clarify whether the circuit court was holding that the entire 1987 amendment to the CBD sector plan was invalid. The court's supplemental order, after reiterating the invalidity of the two development guidelines, clarified "that in no other respect has the Court made any determination concerning the validity or invalidity of the 1987 Amendment to the Sector Plan...." In essence, the circuit court made a severability determination. Even though the circuit court viewed the two guidelines to be invalid, it was not predicating reversal of the Silver Triangle approvals on a conclusion that the 1987 amendments to the sector plan would not have been adopted, or that the sector plan itself would not have been continued in effect, absent the two questioned guidelines. Appellees never sought a declaration from the circuit court that the 1987 amendments were invalid in their entirety, and Appellees have not sought in this Court alternatively to support the circuit court judgment on that ground. Thus, there was no holding by the circuit court that, because provisions in the 1987 amendments to the sector plan were invalid, the Silver Triangle approvals had fallen by virtue of having been tied, as a matter of legislative intent, to the "ineffective guidelines."

In this respect the instant matter is similar to *Martin and Burch v. Mayor and Aldermen of Annapolis*, 248 Md. 551, 237 A.2d 728 (1968). That case involved the challenge on a number of grounds to the construction on the Annapolis waterfront of a hotel. After a building permit had been issued for a hotel with 137 rental units on a site in a maritime zone under the Annapolis zoning ordinance,

protestants questioned whether a hotel was a permitted use in that zone. Annapolis then amended its ordinance expressly to permit hotels in excess of 100 rooms in maritime zones. A circuit court held that the 100 room minimum requirement was invalid, that it was not severable from the balance of the amendment, and that the entire express permission amendment was invalid. Nevertheless, because the circuit court also concluded that hotels were permitted uses in maritime zones prior to the amendment, the building permit was validly issued. This Court agreed that hotels were permitted uses in maritime zones prior to the amendment and, therefore, did not consider the validity of the amendment. In the instant matter Moore has complied with the requirements applicable to the Silver Triangle project and, therefore, we have no need to consider whether development guidelines applicable to other properties are valid. Those guidelines have no bearing on the approvals of the project and preliminary plans which are the subjects of this action.

In its supplemental order the circuit court in essence reaffirmed its conclusion of a nexus between the "ineffective" guidelines and reversal of the approvals "because the rights of [the instant Appellees] may have been prejudiced by [the] reliance" of the Board "on the 1987 Sector Plan Amendment . . ., provision[s] of which are, in light of applicable zoning, ineffective. . . ." In its original opinion the circuit court had elaborated that "this 'error of law' may have prejudiced substantial rights of [the instant Appellees], particularly those [Appellees] who have been denied the right to pursue the OMD in parts of the CBD outside the Stage II core area. . . ." A principal deficiency in that analysis is that there is no evidence that any Appellee applied for project approval of an OMD, non-residential project to be developed on a CBD-2 or CBD-3 site in the CBD outside of the Stage II core area. Nor is there any evidence that any Appellee was deterred from so applying by the questioned guidelines. There is no evidence that any Appellee sought project plan approval for OMD develop-

ment of a residential project outside of the core area in the CBD for which that Appellee sought more than 12.5% of the floor area in commercial use. Nor is there any evidence that any Appellee was deterred from so applying.[8] Appellees are attempting to challenge guidelines which were not applied in approving the Silver Triangle project and which have not affected anything that any Appellee seeks to do with that party's own property.

Further, even if an Appellee had been obstructed in a proposed development of that Appellee's property by one or both of the "ineffective" guidelines, the remedy, given the circuit court's unchallenged severability conclusion, would have been to permit that Appellee to proceed under the sector plan, as amended in 1987, without applying the invalid guideline. We do not see how invalidating an approval, granted independently of the "ineffective" guideline to another property owner for a different site, cures any injury sustained by our hypothetical Appellee.

Appellees also refer to the Administrative Procedure Act, Md.Code (1984), § 10–215(g)(3) of the State Government Article under which a reviewing court may "reverse or modify the decision [of an agency] if any substantial right of the petitioner may have been prejudiced" because of certain errors.[9] Appellees contend that use of the past

---

8. Nor is there any evidence that any person who is not an Appellee had sought, or was deterred from seeking, an approval that was blocked by an "ineffective" guideline.

9. Section 10–215(g) of the State Government Article reads:
   *"Decision.*—In a proceeding under this section, the court may:
   (1) remand the case for further proceedings;
   (2) affirm the decision of the agency; or
   (3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:
      (i) is unconstitutional;
      (ii) exceeds the statutory authority or jurisdiction of the agency;
      (iii) results from an unlawful procedure;
      (iv) is affected by any other error of law;
      (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
      (vi) is arbitrary or capricious."

tense of the potential subjunctive mood ("may have been prejudiced") shows that no actual injury is required. We need not determine in this case, however, the degree of prejudice which the statute contemplates. This is because the ground for reversal of the Board's decision relied upon here, in terms of § 10–215(g), is that of subparagraph (3)(iv), namely, that the decision was "affected by any other error of law...." As we have shown above, the Board's decision was not affected in any recognized legal sense by the assumed invalidity of the guidelines. We hold simply that the Appellees are not prejudiced by that claimed error.

JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF AN ORDER AFFIRMING THE OCTOBER 20, 1988, APPROVALS BY THE MONTGOMERY COUNTY PLANNING BOARD OF PROJECT PLAN 9–88005 AND OF PRELIMINARY PLAN 1–86242. COSTS TO BE PAID BY THE APPELLEES.