46 N.J. Super. 152 (1957)
134 A.2d 345
TOWNSHIP OF WASHINGTON, IN THE COUNTY OF BERGEN, ETC., ET ALS., PLAINTIFFS, AND BOROUGH OF HO-HO-KUS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, INTERVENING PLAINTIFF,
v.
VILLAGE OF RIDGEWOOD, IN THE COUNTY OF BERGEN, ETC., ET ALS., DEFENDANTS. CHARLES W. GRENZ, ET ALS., PLAINTIFFS,
v.
VILLAGE OF RIDGEWOOD, IN THE COUNTY OF BERGEN, ETC., ET ALS., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided August 9, 1957.
*153 Mr. Lloyd L. Schroeder, attorney for plaintiffs Township of Washington, et als.
Messrs. Toner, Crowley, Woelper & Vanderbilt, attorneys for plaintiffs Charles W. Grenz, et als.
Mr. Paul A. Vivers, attorney for plaintiff-intervenor Borough of Ho-Ho-Kus.
Mr. James A. Major (Mr. William E. Reinhardt, of counsel), attorney for defendants Village of Ridgewood and Pittsburgh Des Moines Steel Co.
*154 GRIMSHAW, J.S.C.
The Village of Ridgewood operates a municipal water system. In addition to supplying the public water needs of the municipality, Ridgewood sells water to its own inhabitants and those of the neighboring communities of Glen Rock, Midland Park and the greater part of the Township of Wyckoff.
In 1954 the village commissioners determined to increase the capacity of the water system. Accordingly, a consulting engineer, Mr. Alfred Crew, was retained to make a survey and report his findings to the commissioners. Mr. Crew's report was submitted under date of December 31, 1954. Upon receipt of the Crew report the village commissioners referred it for comment to Mr. Charles Capen, another expert in the field. This latter action did not indicate a lack of confidence in Mr. Crew; rather, it was taken because of a laudable desire on the part of the commissioners to exercise caution in view of the size of the project. Mr. Capen's comments on the Crew report were forwarded to the village commissioners on February 15, 1955.
In his report Mr. Crew recommended, among other things, the erection of three elevated tanks for the storage of water. Two of the tanks, known respectively as the Goffle tank, having a capacity of two million gallons, and the Cedarhill tank, having a capacity of one million gallons, were to be located in the Township of Wyckoff. The third, known as the Van Emburgh tank, having a capacity of 500,000 gallons, was to be located on a plot owned by the village on Van Emburgh Avenue. This tract is partly in Ridgewood and partly in the Borough of Ho-Ho-Kus and adjoins the Township of Washington. All of the sites are in the first-class residential zones of the municipalities in which they are respectively located. In addition, the Van Emburgh tract borders on the one-family residential zone of the Township of Washington.
In his comments on the Crew report, Mr. Capen, while generally approving the conclusions reached, had this observation to make:
*155 "In areas where elevated tanks have been established (and particularly where such installation has been made prior to nearby residential developments) repetition of the practice may well be in order. A very serious question is raised, however, in regard to placing an elevated tank in the Goffle area, near Goffle Road. There are a number of substantial residences in the vicinity which will probably be adversely affected in value by such a structure. It is therefore recommended that the entire matter of this storage be carefully reviewed and that an underground or ground level storage tank be substituted. This procedure is not a new trend but has been adopted in various residential communities."
During the final hearing Mr. Capen was examined in connection with the quoted recommendation. He was asked why, in view of the fact that the Van Emburgh locality was of a much higher type than the Cedarhill location, he had not made a similar recommendation with reference to the Van Emburgh site. Mr. Capen's reply was that at the time of his report he had not seen the Van Emburgh area for some years. He agreed that the character of the neighborhood had changed drastically since last he had seen it.
Thereafter, on June 14, 1955, the village commissioners of Ridgewood adopted a resolution appropriating the necessary funds for the new construction and authorizing the issue of bonds to cover the cost. Objections were raised by the Township of Wyckoff to the construction of elevated tanks at the Goffle and Cedarhill sites. In the face of the opposition from Wyckoff, Ridgewood amended its plan, purchased additional property and prepared to construct ground level tanks in the vicinity of the Goffle and Cedarhill sites.
In the meantime Mr. Crew, on behalf of Ridgewood, made an informal application to the municipal authorities of Ho-Ho-Kus for permission to erect a storage on the Van Emburgh site. The request was referred to the Ho-Ho-Kus Board of Adjustment, which met with Mr. Crew. After the meeting the board of adjustment orally recommended the granting of a variance and the building permit was issued.
Work on the foundation of the Van Emburgh tank was started on January 23, 1956. On April 11, 1956 the work on the superstructure was commenced and continued until restrained by this court at the request of the Township of *156 Washington in an action filed on April 23, 1956. On April 24, 1956 the Ho-Ho-Kus borough council revoked the building permit on the ground that the construction of the tank was in violation of the terms of the variance theretofore granted to the Village of Ridgewood. The restraint was dissolved shortly thereafter but work on the tank was not resumed in view of the revocation of the Ho-Ho-Kus building permit.
Testimony at the hearing disclosed a sharp difference of opinion as to what took place at the meeting between Mr. Crew and the Ho-Ho-Kus Board of Adjustment. However, in view of the fact that Ridgewood has admitted that no attempt was made to comply with the provisions of the zoning ordinance of Ridgewood or that of Ho-Ho-Kus, it is unnecessary to attempt to reconcile the conflicting testimony.
The distribution of water by a municipality to its inhabitants and others, for domestic and commercial uses, is a private or proprietary function which in its exercise is subject to the rules applicable to private corporations. Reid Development Corp. v. Parsippany-Troy Hills Township, 10 N.J. 229 (1952). That being so, it follows that the Village of Ridgewood is subject to the zoning ordinance of the Borough of Ho-Ho-Kus and is also subject to the provisions of its own zoning ordinance. See Thornton v. Village of Ridgewood, 17 N.J. 499 (1955).
The defendant Village of Ridgewood claims immunity from compliance with the zoning ordinances of either Ridgewood or Ho-Ho-Kus, citing Aviation Services v. Board of Adjustment of Hanover Township, 20 N.J. 275 (1956). That case, however, does not apply in the situation presented here. In the Aviation case the court had before it the Municipal Airport Act, R.S. 40:8-1 et seq. It decided that the Morristown Municipal Airport was not subject to the zoning ordinance of Hanover Township. In so holding, however, the court expressly limited the effect of its decision:
"Our holding in this case is not to be considered as giving judicial recognition or impetus to a program of wholesale aggrandizement of territory. The authority bestowed upon municipalities to establish *157 and maintain public airport facilities must be reasonably exercised in response to the public need, both present and that fairly to be anticipated. While this court would not condone arbitrary action in the establishment or operation of airport facilities within the domain of another governing power, it is incumbent upon us to lend a liberal construction to the airport legislation, R.S. 40:8-1 et seq., to insure the benefits which were intended to flow to municipalities having the foresight to maintain these facilities."
But even if, as the defendant contends, the operation of the water system is a governmental function, the discretion which the municipality has in carrying out its purposes is not unrestrained. Such action as it undertakes may not be arbitrary and capricious. City of Newark v. N.J. Turnpike Authority, 7 N.J. 377 (1951).
Defendant cites numerous cases in which the courts have considered and refused to overrule the exercise of discretion by various agencies of government. In each of those cases, however, it is made plain that the agency concerned had before it all of the facts respecting the problem there under consideration and acted only after a study of those facts. In the present case the record is clear that as far as the Van Emburgh tract was concerned the village commissioners acted only on the recommendation contained in the Crew report. That recommendation was based solely on engineering considerations. The engineer did not know of nor was he expected to take other elements into consideration.
In authorizing the construction of the Van Emburgh tank the commissioners gave no thought to the character of the neighborhood nor to the effect which the presence of the tank would have on property values. No consideration was given to alternate and less objectionable methods of providing adequate storage facilities. Apparently the fact that Ridgewood owned the Van Emburgh site was what caused the village commissioners to decide to locate the tank on that tract. In my opinion the decision was arbitrary, unreasonable and capricious.
Therefore, for the reasons given above, I am of the opinion that the Van Emburgh tank must be removed.