EDWARD CAMERON *vs.* ZONING AGENT OF BELLINGHAM & others.[1]

Norfolk. May 6, 1970. — June 19, 1970.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & QUIRICO, JJ.

*Zoning,* Validity, Public housing.

A zoning by-law permitting as of right the use of land in agricultural, residence and business districts for public housing operated by a housing authority, prohibiting the use of land in such districts for private "Multi-family" dwellings except in limited circumstances upon a special permit from the board of appeals, and establishing "Multi-family" districts, each of which could be created only by a town meeting vote amending the zoning map and would be subject to certain restrictions, did not violate the uniformity provisions of G. L. c. 40A, § 2, and did not make a discriminatory classification in favor of public housing.

PETITION for a writ of mandamus filed in the Superior Court on September 9, 1969.

The case was heard by *Tomasello,* J.

*Eugene L. Tougas* for the petitioner.

CUTTER, J. Cameron on September 9, 1968, filed this petition for a writ of mandamus to enforce the zoning by-law of Bellingham (the town) and to require revocation of a building permit issued to Varrasso Brothers, Inc.

---

[1] Bellingham Housing Authority, and the town clerk of Bellingham.

(Varrasso).[2]   Varrasso has made a contract with the Bellingham Housing Authority (the Authority) to build a sixty-four unit "housing [complex] for the elderly" on the Authority's premises (parcel A) in an agricultural district.   Parcel A contains 172,455 square feet of land with a frontage of 76.22 feet on Depot Street.   This frontage was increased to 150 feet after the filing of the petition by a deed dated April 24, 1969, to the Authority which gave it an additional 3,877 square feet of land adjoining parcel A on the south.   Various facts alleged in the petition and certain other facts are stipulated to be true.

The town's zoning by-law provides (§ 1210) that it is to be administered by the selectmen through the zoning agent. "No building shall be erected . . . and no use of land or a building shall be begun . . . without a permit . . . issued by the [z]oning [a]gent."   Section 2100 establishes various use districts.   In an agricultural district (§ 2400) farming and various related uses have been permitted, as well as residential use for single family and two-family houses and public housing.   Public housing is defined as "housing operated by a public body created pursuant to . . . [G. L. c. 121, § 26K][3] or corresponding provisions of earlier laws."

An amendment of the zoning by-law was adopted at a special town meeting on October 4, 1968.   This added (1) § 2550, which provided, "Public Housing shall be exempt from the minimum requirements of [i]ntensity of [u]se as set forth in" § 2600 (which provided certain minimum lot areas and coverage and yard requirements), and (2) also a footnote 6 to the definition of residential uses in § 2400, "Except that Multi-family shall not include public housing." Theretofore Multi-family housing residential use (see § 2400,

---

[2] It is agreed that the town's board of appeals purported to grant to the Authority a variance permitting it to construct a thirty-two unit housing complex for the elderly.   A bill in equity seeking review of this action of the board is still pending.

[3] Section 26K, as amended through St. 1966, c. 704, § 1, dealt with the organization and dissolution of housing authorities.   It was repealed by St. 1969, c. 751, § 2, and its provisions are now found in G. L. c. 121B, § 3 et seq.   Statute 1969, c. 751, §§ 5, 6, in general continued in operation housing authorities existing prior to the effective date of the 1969 act.

fn. 5) had not been permitted except that an existing dwelling might, "on [s]pecial [p]ermit from the [b]oard of [a]ppeals, be altered to house up to four families . . . provided that the [b]oard . . . shall find that the structure could not reasonably be used . . . for any permitted purpose."

By an amendment of the zoning by-law, adopted on March 21, 1969, a new "Multi-family" dwelling use district was authorized. No area of land was set aside for private "Multi-family" housing, and a new § 3710 provided that "Multi-family Districts . . . shall each be created only by vote of the [t]own [m]eeting amending the [z]oning [m]ap."[4] Cf. *Noonan* v. *Moulton,* 348 Mass. 633, 637–639. "Multi-family" use was listed and included in § 2400 and appropriate reference was made to footnote 6 excluding public housing from the term "Multi-family." Cameron in his brief, we think correctly, states that, "[w]hile the meaning of . . . footnote [6] is not as clear as it could be . . . [Cameron] deems that the town, in amending the by-law, intended to exempt from the prohibition of construction of multi-family dwellings [where that prohibition was effective] any public housing and not to provide an exception for public housing" under G. L. c. 40A, § 4 (as amended through St. 1966, c. 199).

The purported variance was for thirty-two dwelling units and not for the sixty-four units now under construction. Construction has not proceeded in reliance on the variance but upon the building permit issued to Varrasso. A roadway has been constructed which affords necessary frontage for eight buildings, built at a cost of about $1,000,000.

After the 1968 and 1969 by-law amendments, the present petition was amended to refer to them. Their content was established by the stipulation already mentioned. Upon the agreed facts, a Superior Court judge ruled that the amendments were valid and that the construction permit had been

---

[4] It was further provided that "each such [multi-family] district shall not be less than twenty acres . . . shall front for at least 500 feet on an arterial street, and shall contain not less than 70% vacant or agricultural land."

issued in conformity with "legal requirements." He "denied" the petition for a writ of mandamus. Cameron appealed.

Cameron's ground for attacking the issuance of the permit and the by-law as amended is stated in the petition. He contends that the "by-law . . . permits, as of right, the use of land for the construction of public housing in areas . . . whose zoning classifications are either Agricultural District, Residence District, or Business District while another portion of the by-law provides that no multi-family buildings may be constructed in . . . [these] districts." This, he says, renders the by-law "inherently discriminatory and bases the use of land upon the . . . ownership of land and not in a manner whereby all regulations and restrictions [will] be uniform for each class or kind of buildings, structures, or land and for each class or kind of use, throughout the district."

General Laws c. 121, § 26S (as amended through St. 1964, c. 636, § 7; see now G. L. c. 121B, § 28), provides that housing authority projects must comply with local zoning provisions. *Russell* v. *Zoning Bd. of Appeals of Brookline,* 349 Mass. 532, 536. This by-law, however, purports to permit public housing projects under the use provisions for most areas (§ 2400). The question for our decision is whether, upon this record, such permission for public housing must be ruled to be invalid.

General Laws c. 40A, § 2 (as amended through St. 1959, c. 607, § 1), provides in part that any town, by by-law, may "regulate . . . the . . . size of buildings . . . the density of population, and the location and use of buildings . . . for . . . agriculture, residence or other purposes . . . . For . . . such purposes a . . . by-law may divide the municipality into districts of such number . . . as may be deemed best suited to carry out the purposes of this chapter [40A], and within such districts it may regulate and restrict the erection . . . or use of buildings . . . or use of land . . . . All such regulations and restrictions shall be uniform for each class or kind of buildings, structures or

land, and for each class or kind of use, throughout the district, but the regulations and restrictions in one district may differ from those in other districts." No violation of these provisions of § 2 is shown by the record. Public housing, under the amended by-law, is a permitted use in any zoning district in the town except an industrial district. The by-law applies uniformly to all public housing. Cf. *Schertzer* v. *Somerville*, 345 Mass. 747, 750–752 (violation of uniformity by arbitrary revision of zoning districts). Cameron, however, argues that the amended by-law discriminates in favor of public housing in that it imposes (see fn. 4, *supra*, and related text of this opinion) much greater burdens on privately owned housing of a similar character than upon public housing.

The alleged discrimination was not based on any discretion given with respect to public housing. Compare *Smith* v. *Board of Appeals of Fall River*, 319 Mass. 341, 344 (discretionary power purportedly given by a zoning ordinance "to indulge in 'spot zoning' at its discretion or whim"). Under this town's by-law, public housing is permitted as of right, except in industrial districts; whereas private "Multifamily" housing is to be allowed only in the discretion of the town meeting itself in accordance with some specified requirements. It must be remembered, however, that housing authorities and other public housing bodies are public instrumentalities carrying out public purposes, with some degree of public assistance, and subject to substantial statutory regulation and public control (see e.g. G. L. c. 121B, §§ 3, 4, 5, 6, 11, 13, 14, 16, 25, 26, 27, 29, 30, 31, 32, 33, 37, 38–40). We think that a town, at least in the absence of evidence and considerations not shown in this record, may reasonably conclude that the public interest requires (or makes appropriate) the allowance of public housing in specified areas of the town as a permitted use, while it imposes greater restrictions on the construction of privately owned housing of generally similar character. The public nature of, and regulation imposed upon, public housing reasonably permits it to be placed in a separate classification for zoning

purposes.   See somewhat analogous situations discussed in *Sellors* v. *Concord,* 329 Mass. 259, 263–264, and *Pierce* v. *Wellesley,* 336 Mass. 517, 523–524.   See also *Sinn* v. *Selectmen of Acton, ante,* 606.   Legislative bodies, State or local, have wide powers of classification based upon reasonable differences in facts underlying the several classifications. See *Cabot* v. *Assessors of Boston,* 335 Mass. 53, 69–70; *Maher* v. *Brookline,* 339 Mass. 209, 213–214; *Pioneer Credit Corp.* v. *Commissioner of Banks,* 349 Mass. 214, 222–224; *Commonwealth* v. *Leis,* 355 Mass. 189, 197–198.   It has not been established that the classification here made is unreasonable.

*Order for judgment affirmed.*