## FEINBERG ET AL. *v.* THE SOUTHLAND CORPORATION ET AL.

[No. 153, September Term, 1972.]

*Decided February 9, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Francis N. Iglehart,* with whom were *Hessian & Iglehart* on the brief, for appellants.

*William F. Mosner,* with whom were *Power & Mosner* on the brief, for Murray Wolman and Herbert Kishter, part of appellees; *R. Bruce Alderman, County Solicitor,* and *Maurice W. Baldwin, Jr., Assistant County Solicitor,* on the brief for Baltimore County, Maryland, another appellee; and *Lawrence F. Rodowsky* and *Frank, Bernstein, Conaway & Goldman* on the brief for The Southland Corporation, other appellee.

BARNES, J., delivered the opinion of the Court.

This appeal from the Circuit Court for Baltimore County, in equity (Menchine, J.), presents two questions: whether the lower court erred (1) in finding that the commercial development of a parcel of land on Greenwood Road in Baltimore County was permitted under a "saving clause" in the new zoning regulations, by virtue of a preliminary development plan approved on March 15, 1971, by the then Director of Planning and Zoning prior to March 31, 1971, the effective date of the new regulations; and, (2) in finding that certain side yard setbacks were not required even though the preliminary development plan showed an intent to subdivide the subject property between two owners.

The appellants, Raymond Feinberg, et al., were plaintiffs below and are property owners near the subject property. After the preliminary development plan was approved, the appellants filed a bill of complaint for declaratory relief and for a permanent injunction against the owners of the subject property and Baltimore County, the appellees in this appeal. Judge Menchine, after tak-

ing testimony and hearing argument, passed an order on May 9, 1972, dismissing the bill of complaint and requiring the plaintiffs to pay the costs. The plaintiffs filed a timely appeal from that order. We have concluded that the chancellor committed no reversible error and we will affirm that order.

The Southland Corporation, a Texas Corporation (Southland), owned a tract of land consisting of .455 acres of the subject property designated as Lot 1 on the preliminary development plat (the plat), hereinafter mentioned; and Murray Wolman and Herbert Kishter, co-partners, trading as American Communities Company (Wolman-Kishter), owned a tract of land consisting of .810 acres of the subject property designated as Lot 2 on the plat. These two tracts carried the M.L. zoning classification prior to the county-wide comprehensive rezoning effective March 31, 1971.

Prior to the comprehensive rezoning, Section 253.1 of the Baltimore County Zoning Ordinance authorized "non-residential uses permitted and as limited in BR zone," with certain exceptions not pertinent to the present case. Under the provisions of Council Bill No. 100 (1970), all BR uses were prohibited except to the extent of an amendment to Section 103.1 of the zoning ordinance, providing as follows:

> "Provided further, however, that the use and development of land in M.L. zones shall not be affected by the foregoing provision, but development is permitted in accordance with any *preliminary development plan approved by the Office of Planning and Zoning before the effective date of this further proviso,* even though such development may be counter to then-current regulations for M.L. zones, if, on the fifth anniversary of such effective date, construction either is completed or is substantially commenced and diligently being pursued to completion; otherwise, the regulations generally in ef-

fect at the time such use or development is to be established shall control." (Emphasis supplied)

In the title to the ordinance amending Section 103.1, the legislative purpose was declared to be:

". . . to provide for the application of light manufacturing zoning regulations to areas covered by *previously submitted sub-division plans.*" (Emphasis supplied)

It thus appears that the proposed use of the subject property for BR purposes was prohibited by the new comprehensive zoning ordinance unless Southland and Wolman-Kishter acquired rights under the saving clause of the amendment to Section 103.1. They successfully contended below that they had acquired such rights by virtue of the approval on March 15, 1972, of a preliminary plan showing the proposed Greenwood Shopping Centre. In addition to other statements and data, the preliminary plan bears the following approval:

"PLANS APPROVED
OFFICE OF PLANNING & ZONING
BY (s) G. E. Gavrelis
DATE 3/15/71
GRANDFATHERED FOR
COMMERCIAL USE /SECT.
103.1 OF Z.R."

The preliminary plan was prepared by James S. Spamer & Associates, Engineers and Surveyors, and is dated March 13, 1971. Lot 1 indicates northerly and southerly lines 60 feet long with a width of between 40 and 46 feet. It is marked "7/Eleven." The west side of Lot 1 adjoins Lot 2. The easterly boundary line of Lot 2 is 46 feet long, the westerly boundary line is 50 feet long and the northerly and southerly boundary lines are 145 feet long. It is marked: "7,000° of Retail Stores."

In the preliminary plan, the front yard setback was 105 feet from the residential zone boundary measured from the center of Greenwood Road but was only 75 feet

from the edge of the right of way abutting the residential boundary at Greenwood Road. Mr. Gavrelis and James E. Dyer—the then Director of Planning and Deputy Zoning Commissioner of Baltimore County, respectively—in an affidavit of February 4, 1972 (which was introduced into evidence below and considered by the chancellor), indicated that reliance was placed on the provisions of Section 255.2 of the zoning regulations for the approval of a 75-foot front yard, but that a closer review of the applicable zoning regulations indicated that Section 253.6—stating in part to the effect that within 100 feet of any residential zone boundary or right of way of any street abutting such a boundary there should *only* be permitted passenger automobile accessory parking and those uses permitted in the M.L. zone, as limited by Section 241—required a front yard setback of 100 feet from the *edge of the right of way* abutting the residential zone boundary at Greenwood Road. Accordingly, the setbacks were adjusted on a final plat approved on April 8, 1971.

On May 6, 1971, Southland received approval from the County to construct a retail food store on Lot 1. The neighboring property owners, appellants here, filed their bill of complaint on June 25, 1971, against Southland, Wolman & Kishter, and the County, praying for declaratory and injunctive relief. After answers were filed, the defendants moved for summary judgment in their favor supported by an affidavit of Mr. Gavrelis, dated December 2, 1971. A true copy of the preliminary plan was attached as an exhibit to the affidavit of December 2. The affidavit provided, in part:

". . . approval of this plan was granted by [the Office of Planning and Zoning] on March 15, 1971, prior to the effective date of Bill 100, (1970 Session, Baltimore County Council). At the time of said approval retail stores were a permitted use in the ML Zone, and a change in permitted uses by Bill 100 did not affect the

Greenwood Shopping Centre site since the plan had been approved prior to the changes effected by Bill 100.

"That the development plan submitted for Greenwood Shopping Centre, as shown on the attached plat, shows that the contemplated use for the whole parcel is for retail stores arranged in two contiguous and adjoining buildings. At the time the plat was approved (March 15, 1971) the entire tract of 1.23 acres was owned by the developers of Greenwood Shopping Centre and the set-backs required by pertinent sections of the Zoning Regulations would be measured from the two side walls of the entire planned structure, and these set-backs were in conformity with the Regulations. The plan did indicate an intent to divide the tract into two lots, but under these circumstances this Office has consistently interpreted and applied the Zoning Regulations to not require set-backs from a future property line when the proposal indicates a common scheme to develop the tract as a unit with common entrances, parking areas, walkways, etc. A later division of ownership does not require different set-backs where the parties adhere to the approved plan of development.

"In my opinion, as Director of the Office of Planning and Zoning, the development of the Greenwood Shopping Centre in conformity with the plan shown on the plat attached hereto would not be contrary to the Zoning Regulations of Baltimore County."

The plaintiffs below called two employees from the County's Office of Planning and Zoning, who testified in direct contradiction to the statements in Mr. Gavrelis' affidavit in regard to side yards. They stated, in effect, that the practice in the Office of Planning and Zoning was

to consider that the lack of side yards between construction on Lots 1 and 2 was a violation of the zoning regulations.

Judge Menchine filed a carefully written opinion on May 9, 1972, indicating that the approval upon the preliminary development plan of March 15, 1971, was sufficient to bring the subject property and its proposed commercial use within the saving clause. He was also of the opinion that the front yard setback, erroneously calculated on that plan, was "merely an engineering error" later corrected on the final plan and, further, that the indication of divided ownership of Lots 1 and 2 on the preliminary plan was not a basis for requiring any side yard setbacks between Lots 1 and 2. The order of May 9, 1972, denying the relief prayed for in the bill of complaint and dismissing the bill of complaint, was then entered.

## (1)

The appellants earnestly contend that inasmuch as the front yard setback in the preliminary plan approved March 15, 1971, did not conform to the zoning regulations (75 feet vs. 100 feet), the preliminary plan was invalid and only the final plan approved on April 8, 1971, (after the effective date of the new zoning ordinance prohibiting the proposed use unless it was within the purview of the saving clause) was the lawful plan which could effectively be approved by the Office of Planning and Zoning. Hence, they say, the approval came too late and the proposed use is not within the saving clause.

This contention, however—as the chancellor aptly pointed out in his opinion—ignores both the statutory extension of up to five years set out in the amendment, but also the purpose of the amendatory legislation set out in the title of the ordinance, which, as we have already indicated, was "to provide for the application of light manufacturing zoning regulations to areas covered *by previously submitted sub-division plans.*" (Emphasis

added) The preliminary plan is the very type of document to which the saving clause refers and to which it was intended to apply. The "development plan" is specifically stated to be "preliminary" obviously connoting that ultimately during the five-year period a final development plan containing minor changes in plan—but not changing an essential nature of the use—would be filed and approved.

In regard to the question of whether the later correction of the front yard setback from the 75-foot setback shown in the preliminary plan to the 100-foot setback shown in the final plan prevents the approval of the preliminary plan from operating effectively to bring the subject property and its proposed use within the saving clause, we consider our decision in *Martin and Burch v. Annapolis,* 248 Md. 551, 237 A. 2d 728 (1968) to be dispositive. In *Martin and Burch,* the City of Annapolis on December 14, 1964, passed an ordinance repealing and re-enacting with amendments Sections 26-32 of the Code of Annapolis, which, in relevant part, provided:

> "Section I: * * * In the Historic Area of the City as defined in Section 6-33 of this Code no building shall be constructed or increased in height in excess of forty-five (45) feet except as may be permitted by the Mayor and Aldermen by resolution passed by a favorable vote of the majority of the entire membership thereof. * * *
>
> "Section II: * * * this Ordinance shall take effect from the date of its passage, but shall not apply to any construction for which application has been made for a building permit prior hereto, and further shall not apply to any proposed construction currently the subject of appeal to administrative agencies of the City of Annapolis or to the Circuit Court for Anne Arundel County, such construction to be subject to Ordi-

nance relating to height in effect at the time of such appeal."

The preliminary plans were for a proposed seven-story hotel building which was approximately 80 feet in height with 137 rooms to be built on a 1½ acre tract. In the final working drawings—filed after the ordinance became effective—the site was reduced to one acre; the height was lowered; the building was swung around, and provision was made for 155 rooms rather than 137 rooms. We held in *Martin and Burch* that the building application, as amended, came within the saving clause of the Annapolis ordinance. We stated:

"The appellants, however, earnestly contend that because of certain changes in the working drawings filed by Hospitality House with the City Engineer from the preliminary plans originally filed in August, 1964, on which the permit of October 6, 1964, was issued, the hotel is, in effect, being constructed under a new permit and not under the permit issued prior to the ordinance of December 14, 1964."

\* \* \*

"In our opinion, the plans submitted in October, 1965, were substantially similar to the plans originally submitted by Hospitality House. The basic scope of the original plans was not changed. Both sets of plans call for the same use, i.e., the erection of a hotel, with accessory parking and restaurant facilities. There were modifications in the placement of the hotel and facilities on a reduced portion of the original site, but these modifications did not result in any substantial change in the original plans. The subsequent changes were amendments to the original plans, but the original permit with those changes and amendments continued."
248 Md. at 563-64; 237 A. 2d at 734-35.

In *Martin and Burch,* we distinguished our decision in *Norwood Heights Imp. Ass'n, Inc. v. Mayor & City Council of Baltimore,* 191 Md. 155, 60 A. 2d 192 (1948), relied on by the appellants. In *Norwood Heights,* no saving clause was involved, but a provision of the Baltimore City Zoning Ordinance prohibiting the consideration of substantially the same application within six months after the disapproval of the first application. No amended plats or plans, such as those involved in the present case, were before us or considered by us in *Norwood Heights.* In our opinion, *Norwood Heights* is not in point.

### (2)

The appellants also contend that the development plan for the Greenwood Shopping Centre violates the side yard setback requirements of the M.L. zone.

The side yard setback requirement is: "For residences, as in Section 302; for other buildings, 30 feet." The plan of development was described by Mr. Gavrelis in his affidavit of December 2, 1971, already set forth. He concluded that it was not contrary to the zoning regulations of the County.

The preliminary development plan, the final plan of development and the building permit plan for the first part of the project to be built on Lot 1, all show a 30-foot setback measured from the easterly exterior wall of the proposed stores to the easterly property line of the tract and a 30-foot setback measured from the westerly exterior wall of the stores to the westerly property line of the tract.

It must first be determined what is a "building" for the purpose of calculating the required setback inasmuch as the side yard requirement is 30 feet from a building and a side yard is defined in Section 101 of the zoning ordinance as a "yard extending from the front yard to the rear yard, between the side lot line and the side foundation wall of the main building." A "yard" is de-

fined as "[a]ny open space located on the same lot with a building. . . . The minimum depth or width of a yard shall consist of the horizontal distance between the lot line and the nearest point of the foundation wall of the main building." "Building" is defined in the zoning ordinance as a "structure enclosed within exterior walls or fire walls for the shelter, support, or enclosure of persons, animals, or property of any kind." When completed, the exterior walls of the structure in question will be those walls from which the side yard setbacks are measured on the plans and plats approved by the Office of Planning and Zoning.

The fact that a division wall exists between units does not cause each unit to be a "building." In the zoning regulations in defining a "Dwelling, Semi-detached," for example, it is stated that a dwelling, semi-detached is a *"building* that has two one-family housekeeping units erected side by side on adjoining lots, separated from each other by an approved masonry party wall . . . and separated from any *building* by space on all sides." (Emphasis added) Then, too, the definition of an "Accessory Building" is "[o]ne which is subordinate and customarily incidental to and on the same lot with a main building. . . . A structure connected to a principal building . . . with one wall in common, shall not be considered an accessory building."

It thus appears that the definition of "building" and the use of that word in other definitions is sufficiently broad to include the combination of units under the development plan approved for the Greenwood Shopping Centre. It is clear to us that the development plan provided for a singleness of use so that the proposed structure was a "building" and not two "buildings." We find our decision in *Shapiro v. Baltimore,* 230 Md. 199, 186 A. 2d 605 (1962) persuasive on this point. In *Shapiro,* we adopted as our opinion on this point the opinion of the trial judge (Judge Reuben Oppenheimer, later a judge of this Court) to the effect that the singleness of

use and operation of the garden apartments to be constructed prevailed over various technical difficulties so that the apartments, in groups of fourteen, were permitted without side yards between each two-story unit. The opinion in *Shapiro* carefully considered our prior decisions in *Akers v. Mayor & City Council of Baltimore,* 179 Md. 448, 20 A. 2d 181 (1941) ; *Norwood Heights Imp. Ass'n, Inc. v. Mayor & City Council of Baltimore,* 191 Md. 155, 60 A. 2d 192 (1948) ; and *Windsor Hills Imp. Ass'n, Inc. v. Mayor & City Council of Baltimore,* 195 Md. 383, 73 A. 2d 531 (1950) [cited in 101 C.J.S. *Zoning* § 147, at 907], relating to the nature of garden-type apartments and found those decisions compatible with the decision in *Shapiro.*

Judge Menchine was of the opinion that "the development of lands by combining dual owners must be carried out as fully in accordance with the development plan as is land being developed by a single owner." We agree with this. As we have observed in prior decisions, zoning ordinances are "concerned with the use of property and not with ownership thereof nor with the purposes of the owners or occupants," *Mayor & City Council of Baltimore v. Poe,* 224 Md. 428, 433, 168 A. 2d 193, 195 (1961), and are "concerned with use, not with ownership," *Boulevard Scrap v. Baltimore,* 213 Md. 6, 10, 130 A. 2d 743, 745 (1957).

In our opinion, the chancellor correctly concluded as a matter of law that the zoning regulations did not require a side yard between Lots 1 and 2 so that the difference in evidence in regard to the administrative practice is immaterial. The motion of the defendants for summary judgment was properly granted.

Finding no error, we affirm the order of the lower court.

> *Order of May 9, 1972, affirmed, the appellants to pay the costs.*